D|F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
Louis Cantelmo,

                    Plaintiff,

        -against-

United Airlines, Inc.,

                    Defendant.
---------------------------------------------------------------X

**MEMORANDUM & ORDER**

**17-CV-1730 (NGG) (RER)**

NICHOLAS G. GARAUFIS, United States District Judge.

      Plaintiff Louis Cantelmo claims his knee was injured when he was struck by a beverage cart while a passenger on a flight operated by Defendant United Airlines, Inc. (Compl. (Dkt. 1-1 at ECF p.4) ¶ 5.) Currently before the court is Defendant's motion for summary judgment, or, in the alternative, motion in limine. (Mem. in Supp. of Def. Mot. for Summ. J. ("Mem.") (Dkt. 40).) For the following reasons, the motion for summary judgment is DENIED and the motion in limine is DENIED IN PART.

**I.    BACKGROUND**

    **A.    Facts**

      The court constructs the following statement of facts from the parties' Local Rule 56.1 statements and the admissible evidence they submitted. Except as otherwise noted, the following facts are undisputed. Where facts are in dispute, the court notes the dispute, and credits Plaintiff's version of the particular fact if it is supported by record evidence. All evidence is construed in the light most favorable to the non-moving party with all "reasonable inferences" drawn in its favor. ING Bank N.V. v. M/V Temara, IMO No. 9333929, 892 F.3d 511, 518 (2d Cir. 2018).

This action arises out of an injury Plaintiff alleges to have suffered on March 10, 2016 while on a United Airlines flight. (See Tr. of July 19, 2017 Dep. of Louis Cantelmo ("Pl. Dep.") (Dkt. 45-1) at 111:19-24, 116:6-8, 118:13-119:9.) Plaintiff, who was seated in an aisle seat, claims that he was hit in the right knee by a beverage cart being pushed by a flight attendant from the front towards the back of the plane. (Id. at 111:17-24, 112:23-113:3; 118:13-119:2.) Plaintiff states that he "yelled in pain," and that it "felt like something moved" inside his knee. (Id. at 111:24, 166:12-13.) He recalls that the knee appeared "red and swollen" (id. at 167:16-19), and he "requested an incident report and ice" (id. at 112:3).

Approximately two weeks after the alleged incident, Plaintiff sought treatment from a Dr. Hernandez. (Id. at 167:20-168:2, 169:6-19.) Between the alleged incident and this appointment, Plaintiff testified that he was able to work from home and move through his one-story home. (Id. at 168:20-169:2, 169:20-170:6.) He also stated that he was able to leave the house and drive himself places (id. at 170:7-12), but that he had to ice his knee daily and was "living on" Advil (id. at 168:10-19).

Plaintiff had an MRI of his knee on April 16, 2016. (See Tr. of June 6, 2018 Dep. of Sean Thompson, MD ("Thompson Dep.") (Dkt. 42-10) at 31:25-32:5.) On April 20, 2016, Plaintiff sought treatment from Dr. Sean Thompson, a board-certified orthopedic surgeon. (See id. at 19:2-7; 33:7-10.) Dr. Thompson's records show that Plaintiff's right knee was swollen at that time. (Id. at 34:10-12.) Dr. Thompson diagnosed Plaintiff with a medial meniscus tear with chondromalacia of the patellofemoral joint and recommended surgery. (Id. at 31:25-32:5, 39:23-40:4.) He performed arthroscopic surgery on Plaintiff's right knee on May 15, 2016. (Id. 40:25-41:3.) Two months later, Plaintiff continued to experience pain and swelling in the knee. (Id. at

2

41:4-17.) And one year later, in July 2017, Plaintiff reported continued pain in his right knee as well as extreme pain in his left knee. (Id. at 44:5-19.)

Additionally, Plaintiff suffers from degenerative arthritis in his right knee, and by October 2017 had suffered a second meniscus tear in the same area of his right knee as the first meniscus tear. (Id. at 48:2-19, 55:2-13.) On March 19, 2018, Dr. Thompson performed a partial knee replacement on Plaintiff's right knee, after which Plaintiff received physical therapy treatment. (Id. at 60:1-14, 65:4-10.)

During the pendency of the instant litigation, Plaintiff was also examined by Dr. Ramesh Gidumal, another board-certified orthopedic surgeon. (See Sept. 12, 2018 Decl. of Ramesh Gidumal ("Gidumal Decl.") (Dkt. 41) ¶¶ 1, 6; see also Curriculum Vitae of Ramesh H. Gidumal (Dkt. 41-1) at 1.) Based on his review of Plaintiff's medical records, as well as a physical examination of Plaintiff, Dr. Gidumal stated, "[i]t is my opinion within a reasonable degree of medical certainty that the meniscal tear . . . [wa]s the result of [Plaintiff's] degenerative changes . . . and not [] any traumatic event." (Gidumal Decl. ¶ 10.) He further concluded that "the meniscal tear at issue in this case is not a traumatic tear because of the pre-existing degenerative changes present in the same compartment as his meniscal tears." (Id. ¶ 12.) Moreover, Dr. Gidumal stated, "[Plaintiff's] description of the incident, and his description of the location where the cart allegedly hit his knee . . . , is inconsistent with a traumatic medial meniscal tear." (Id. ¶ 13.) These conclusions directly contradict the testimony of Dr. Thompson—Plaintiff's treating surgeon—who described the damage visible on the April 16, 2016 MRI as "not related to degenerative changes usually" and as "related to an impact." (Thompson Dep. at 40:5-16.) And although Dr. Thompson did not feel prepared to "say with 100 percent certainty that there was a direct, you know, correlation" between the alleged incident on March 16, 2016 and

3

Plaintiff's condition, he did state that "there definitely could be a causal relationship between the impact and the injuries that he had in his knee." (Id. at 25:21-26:7.)

B. **Procedural History**

Plaintiff filed his complaint in Richmond County Supreme Court on October 11, 2016. (Compl.) Defendant answered the complaint on November 8, 2016. (Answer (Dkt. 1-2).) On February 24, 2017, Defendant requested that Plaintiff provide a supplemental demand for relief setting forth the total damages sought in the action pursuant to N.Y. C.P.L.R. § 3017(c). (Notice of Removal (Dkt. 1) ¶ 4.) On March 13, 2017, Plaintiff alleged $550,000 in damages. (Id. ¶ 5.) On March 28, 2017, Defendant timely removed the case to this court, asserting diversity jurisdiction. (See id. ¶ 7.)

Magistrate Judge Ramon E. Reyes, Jr. held an initial conference on May 18, 2017. (May 18, 2017 Min. Entry.) He set a discovery deadline of February 1, 2018, with expert disclosures due on November 1, 2017. (Id.) At a status conference on November 29, 2017, Judge Reyes granted Plaintiff's request for an extension of discovery until April 1, 2018, with expert disclosures due on January 31, 2018. (Nov. 29, 2017 Min. Entry; see also Am. Case Mgmt. Plan (Dkt. 14).)

On May 31, 2017, Defendant received Plaintiff's medical records from Dr. Thompson. (Def. Mar. 2 2018, Letter (Dkt. 17) at 2.) Defendant asserts that the records revealed an initial orthopedic examination and a right knee "arthroscopic surgery" but that they did not "causally relate the meniscal tear and the May 2016 surgery to the [Incident] and fail to speak of prognoses in any regard." (Id.) Plaintiff did not submit a report from Dr. Thompson prior to the close of expert discovery. (Id.) At a status conference on February 6, 2018, counsel for Plaintiff stated that he was still planning to submit a report by Dr. Thompson to counsel for Defendant. (Tr. of

4

Feb. 6, 2018 Conf. ("Feb. 6 Tr.") (Dkt. 16) at 2:15-17.) Counsel for Defendant responded that the expert-disclosure deadline had passed and that "Plaintiff has made no effort to comply." (Id. at 3:11-14.) At Judge Reyes's direction, on February 9, 2018, Plaintiff sent Defendant a letter setting forth the scope of Dr. Thompson's testimony. (See Pl. Feb. 9, 2018 Letter (Dkt. 17 at ECF p.6).) Judge Reyes determined that the proposed disclosure was "inadequate" under Rules 26(a)(2)(B) and (C) and stated that "Dr. Thompson may testify only to those facts acquired and opinions formed during his treatment of the plaintiff, as specifically and expressly reflected in his contemporaneously-generated medical records." (Mar. 12, 2018 Order.)

On April 12, 2018, Plaintiff informed Defendant of his intent to withdraw Dr. Thompson as a witness. (See Pl. Apr. 12, 2018 Letter to Def. (Dkt. 24-1).) Four days later, Plaintiff moved to reopen discovery for "60 to 90 days to allow [P]laintiff to obtain an independent evaluation of his injuries/conditions and their causal relationship to the [incident]." (Pl. Apr. 16, 2018 Letter (Dkt. 26).) Judge Reyes denied this request. (Apr. 19, 2018 Min. Entry.) On May 15, 2018, Plaintiff redesignated Dr. Thompson as a witness (Pl. May 15, 2018 Letter to Def. (Dkt. 32-2)), and Defendant took his deposition on June 6, 2018 (Mem. at 2). On June 19, 2018, Judge Reyes certified that discovery was complete. (June 19, 2018 Min. Entry.)

On October 29, 2018, Defendant filed its fully briefed motion for summary judgment or, in the alternative, motion in limine. (Mot. for Summ. J. (Dkt. 39); Mem. in Opp'n to Mot. for Summ. J. (Dkt. 44); Reply Mem. in Supp. of Mot. for Summ. J. ("Reply") (Dkt. 47).)

## II.   MOTION FOR SUMMARY JUDGMENT

### A.   Legal Standard

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a). "A 'material' fact is one capable of influencing the case's outcome under governing substantive law, and a 'genuine' dispute is one as to which the evidence would permit a reasonable juror to find for the party opposing the motion." Figueroa v. Mazza, 825 F.3d 89, 98 (2d Cir. 2016) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "The movant may discharge this burden by showing that the nonmoving party has 'fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co., 255 F. Supp. 3d 443, 451 (S.D.N.Y. 2015) (alteration in original) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). "'The mere existence of a scintilla of evidence' in support of the non-movant will be insufficient to defeat a summary judgment motion." Transflo Terminal Servs., Inc. v. Brooklyn Res. Recovery, Inc., 248 F. Supp. 3d 397, 399 (E.D.N.Y. 2017) (quoting Anderson, 477 U.S. at 252).

"In determining whether an issue is genuine, '[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion.'" SCW W. LLC v. Westport Ins. Corp., 856 F. Supp. 2d 514, 521 (E.D.N.Y. 2012) (quoting Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995)). "[T]he judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Redd v. N.Y. Div. of Parole, 678 F.3d 166, 173-74 (2d Cir. 2012) (quoting Anderson, 477 U.S. at 249). However, "[a] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," and "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would

6

otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted).

**B.   Application**

In essence, Defendant argues that because Dr. Thompson "may testify only to those facts acquired and opinions formed during his treatment of the plaintiff, as specifically and expressly reflected in his contemporaneously-generated medical records" (Mar. 12, 2018 Min. Entry), Plaintiff has not provided sufficient evidence to create a genuine dispute as to whether his injury was caused by the alleged impact from the beverage cart. For the reasons explained below, the court concludes that Dr. Thompson may testify as to causation, and that summary judgment would therefore be improper.

"In the absence of an expert report[,] the testimony of [a plaintiff's] treating physicians will be limited to opinions they actually formed during the course of treating [that plaintiff]." Romanelli v. Long Island R.R. Co., 898 F. Supp. 2d 626, 631 (S.D.N.Y. 2012) (citations omitted). Therefore, as Judge Reyes held, Dr. Thompson can testify as to his own "personal knowledge from consultation, examination, and treatment of [] Plaintiff," so long as he does not testify as to any "information acquired from other sources." Webb v. Zimmer, Inc., No. 14-CV-1106 (ADS), 2018 WL 836366, at *7 (E.D.N.Y. Feb. 12, 2018) (quoting Spencer v. Int'l Shoppes, Inc., No. 06-CV-2637 (AKT), 2011 WL 4383046, at *3 (E.D.N.Y. Sept. 20, 2011)). This testimony may include opinions on causation. Romanelli, 898 F. Supp. 2d at 631 ("Courts in the Second Circuit have regularly held that this includes opinions on causation."); see also Luscier v. Risinger Bros. Transfer, Inc., No. 13-CV-8553 (PKC), 2015 WL 10847500, at *4 (E.D.N.Y. June 9, 2015) ("[T]he law of this Circuit permits treating physicians to testify on views formed in the course of treatment, including opinions as to causation, without also

submitting an expert report on the same."); Morritt v. Stryker Corp., 973 F. Supp. 2d 177, 185 (E.D.N.Y. 2013) ("Courts in this Circuit routinely permit treating physicians to testify as to opinions formed during their treatment, including causation . . . , without the obligation to submit an expert report." (quotation marks and citations omitted)).

Defendant argues that Dr. Thompson has not expressed a sufficiently conclusive opinion on causation to support Plaintiff's claim. (See Mem. at 1-2.) In particular, Defendant argues that "Dr. Thompson's contemporaneous records . . . state nothing about an analysis of what may have caused Plaintiff's injuries." (Id. at 7.) But this is not entirely true. In his initial evaluation of Plaintiff, Dr. Thompson noted that Plaintiff had been struck by the beverage cart, and recorded his impression as follows: "Posttraumatic right knee medial meniscal tear with failure of conservative management including activity modification and anti-inflammatories." (Medical Records from L. Sean Thompson, MD ("Thompson Records") (Dkt. 42-7 at ECF p.3) at ECF pp.3-4 (emphasis added); see also id. at ECF p.6 (describing Plaintiff as having "sustained posttraumatic injury to the right knee").) These records reflect Dr. Thompson's contemporaneous conclusion that Plaintiff's knee injury was caused by trauma, not degeneration. The records also reference the incident at issue here. (See id. at ECF p.3.)

Contrary to Defendant's assertions, Dr. Thompson's testimony corroborates this conclusion. Defendant correctly notes that he testified that he "could not say with 100 percent certainty that there was a direct, you know, correlation" between the impact and Plaintiff's knee injury. (Thompson Dep. at 26:5-7.) But when pressed on what he meant by this statement, Dr. Thompson clarified: "if [Plaintiff], for example, had a dormant injury to the knee that he did not complain of, an impact such as this could exacerbate the symptoms into needing further treatment." (Id. at 26:12-16.) And, of course, even exacerbation would be sufficient under New

York law to show causation. See, e.g., Stampf v. Long Island R.R. Co., 761 F.3d 192, 207 n.5 (2d Cir. 2014) (noting that, under New York law, "a defendant must take a plaintiff as she finds him and, therefore, is responsible for the harm she inflicts on a person even if that harm is exacerbated by the person's unknown infirmities" (alterations adopted) (quotation marks and citations omitted)). Taken in context, Dr. Thompson's deposition testimony and medical records indicate that he concluded at the time of treatment that Plaintiff's injury was caused by a traumatic event, and that, after speaking to Plaintiff, he believed that the impact with the beverage cart was the cause.

Defendant next argues that "[e]ven if Dr. Thompson were allowed to testify . . . , [his testimony] fail[s] to meet the threshold requirement for admissibility or reliability." (Reply at 3.) Defendant does not appear to challenge Dr. Thompson's qualification as an expert, but rather questions the scientific validity of this conclusions as to causation. It is true that "[e]ven treating physicians [ ] must demonstrate a scientifically reliable method to support their conclusions." Romanelli, 898 F. Supp. 2d at 631 (quotation marks and citation omitted). Under Daubert v. Merrell Dow Pharm., Inc., this requires "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." 509 U.S. 579, 600 (1993). Defendant provides four distinct arguments in favor of its position.

First, Defendant argues that Dr. Thompson has not adequately addressed alternative causes. (Mem. at 18.) "While an expert need not rule out every potential cause in order to satisfy Daubert, the expert's testimony must at least address obvious alternative causes and provide a reasonable explanation for dismissing specific alternate factors identified by the defendant." DeRienzo v. Metro. Transp. Auth., 694 F. Supp. 2d 229, 236 (S.D.N.Y. 2010)

9

(quoting In re Fosamax Prods. Liab. Litig., 688 F. Supp. 2d 259, 268 (S.D.N.Y. 2010)). The only alternate cause Defendant has suggested is that provided by Dr. Gidumal, namely that Plaintiff's injury was caused by degenerative changes. (Mem. at 22; see Gidumal Decl. ¶¶ 4-6, 8, 10.) As noted above, Dr. Thompson's contemporaneous medical records indicate that he concluded that Plaintiff's injuries were caused by trauma, not degeneration. (See Thompson Records at ECF pp.3-4, 6.) And when asked for the rationale behind this conclusion, he testified that the MRI showed damage that was consistent with an impact, not degeneration, and explained the specific reasons for that conclusion. (See Thompson Dep. at 31:25-33:2.) Dr. Thompson's testimony thus directly addresses Defendant's proposed alternative cause, and "provide[s] a reasonable explanation" for his conclusion. See DeRienzo, 694 F. Supp. 2d at 236.

Second, Defendant argues that Dr. Thompson's conclusions as to causation are based solely on temporal proximity to the incident and are therefore unreliable. (Mem. at 18.) Defendant asserts that "the timing of the alleged incident [was] the only information available to Dr. Thompson at the time he was treating Plaintiff." (Id. at 19.) This is simply untrue. As Dr. Thompson testified, he also discussed Plaintiff's memories of the incident with him and reviewed his medical records, including an X-Ray and an MRI. (See, e.g., Thompson Dep. at 31:17-32:5, 36:11-37:7.) The court will not, therefore, find his testimony unreliable on this ground.

Third, Defendant argues that Dr. Thompson did not have sufficient facts and data to draw a reliable conclusion as to causation, and that any conclusion he has reached is therefore based on "pure speculation or conjecture." (Mem. at 18.) In particular, Defendant points to Dr. Thompson's own admission that he did not know some specific details of the cart and the incident that would be helpful in determining causation, particularly the weight and dimensions

10

of the cart and the speed at which it was traveling. (See id.; Reply at 5.) When asked whether he could say that the impact with the cart caused Plaintiff's injury within a reasonable degree of medical certainty, Dr. Thompson responded:

> [F]or me to answer that question, to have a reasonable degree, some of the questions that we—that came up earlier, you know, the point of impact, the speed, the weight, where his knee was positioned at the time of the impact, you know, those things would have to be taken into consideration.

(Thompson Dep. at 75:21-76:2.) Taken in light of his entire testimony and the medical records, however, the court believes that Dr. Thompson has indicated sufficient confidence in his conclusion that Plaintiff's injury was trauma-related and that, to the best of his knowledge, there was no traumatic incident that could have caused that injury except for the collision with the beverage cart. As the court has noted, he relied on the MRI, his examination of Plaintiff, and Plaintiff's account of the incident to conclude that that beverage cart impact likely caused the injury. In explaining his conclusions on causation, he testified:

> Q: And what were your conclusions based on the results of the April 16, MRI?
>
> A: The diagnosis based on his exam and the MRI were that the patient had a medial meniscus tear with chondromalacia of the patellofemoral joint.
>
> . . .
>
> Q: Is chondromalacia a degenerative condition or can it be caused by trauma?
>
> A: It can be caused by trauma.
>
> Q: Can it also be caused by degenerative conditions?
>
> A: Usually with degenerative cartilage changes, you will have fissuring and thinning of the cartilage.
>
> Q: Was there any evidence of fissuring or thinning of the cartilage on Mr. Cantelmo's MRI?

11

A: No.

(Thompson Dep. at 31:25-33:2.) This explanation sets forth the objective indicia on which Dr. Thompson relied in concluding that Plaintiff's injury was traumatic in nature, and Defendant has not raised any argument that this conclusion—or the methods used to reach it—is scientifically unreliable.

Fourth, Defendant argues that Dr. Thompson did not make a firm enough commitment and that he "reveal[ed] a lack of confidence in his statements." (Mem. at 20.) In particular, Defendant relies on Dr. Thompson's testimony discussing his focus during treatment:

> Q: So in your care and treatment of Mr. Cantelmo, before you spoke to counsel, did you make a determination as to the cause of his injuries?
>
> A: I took that into account when treating the patient, Mr. Cantelmo. Usually when I evaluate patients, I'm not—I'm there to see how I can help them, what their injuries are, and if there are solutions to help him. Not necessarily my first thought is to think about, you know, was there a direct causal relationship with the injury and how the patient presents.
>
> Q: And that's exactly the point I'm getting to. So is your testimony that you did not do that analysis for Mr. Cantelmo in your care and treatment, because you're focused on the injury and treating that injury?
>
> A: Correct.

(Thompson Dep. at 28:22-29:16.) But Dr. Thompson's testimony makes clear that, while causation was not his primary focus in treating Plaintiff, he did consider it. He stated that he "took [causation] into account when treating [Plaintiff]" (id. at 29:1-2) and that "based on my knowledge of [Plaintiff's] injuries with the beverage cart, there definitely could be a causal relationship between the impact and the injuries that he had in his knee when I initially saw him" (id. at 25:25-26:3 (emphasis added)).

12

Dr. Thompson further explained that a meniscal tear like Plaintiff's can be consistent with a frontal impact like the one alleged here (id. at 37:17-19), and further stated that "[i]n this case we can extrapolate to the beverage cart" (id. 88:11-13). Throughout his deposition, he testified that he believes—and that he concluded during treatment—that the beverage cart impact was the likely cause of Plaintiff's injuries. (See id. at 67:4-6 ("I would have to say there is some causality with the impact of the beverage cart to the knee."), 69:5-11 ("I can't realistically say that the impact from the cart was a hundred percent responsible for the knee injury. . . . [B]ut I'm saying with some degree of certainty that it should be attributed."), 75:2-3 ("I think there was some contribution with the impact.").)

Although Dr. Thompson could not determine causation "with 100 percent certainty" without additional information about the incident (Thompson Dep. at 26:5-7), that is not what the law requires. Indeed, "there is no Federal Rule of Evidence barring the admission of expert testimony that acknowledges a quantum of doubt," and "federal courts allow experts to offer testimony that is less than entirely certain, trusting in opposing counsel's ability to highlight any weaknesses in the proffered testimony and the jury's ability to determine its ultimate worth." Shepler v. Metro-N. Commuter R.R., No. 13-CV-7192 (RWS), 2015 WL 5671856, at *4 (S.D.N.Y. Sept. 25, 2015) (citing United States v. Moran, 413 F.3d 372, 381 (3d Cir. 2005)). Dr. Thompson testified that he could "say[] with some degree of certainty that [Plaintiff's injury] should be attributed [to the beverage cart impact" (Thompson Dep. at 69:5-11) and that he "would have to say there is some causality with the impact of the beverage cart to the knee" (id. 88:11-13). Drawing all reasonable inferences in Plaintiff's favor, see ING Bank N.V., 892 F.3d at 518, this testimony is sufficient to raise an issue of material fact as to causation. As such, Dr.

13

Thompson can testify as to his determinations made in the course of treating Plaintiff, and the jury can weigh that testimony along with the other admissible evidence regarding causation.

Having determined that Dr. Thompson may testify as to causation, summary judgment is inappropriate. Dr. Thompson will testify that trauma caused Plaintiff's knee injury; Dr. Gidumal will testify that it was caused by degeneration. This is a "genuine dispute as to [a] material fact," Fed. R. Civ. P. 56(a), and must be resolved by the jury.

### III.   MOTION IN LIMINE

"The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." Gorbea v. Verizon N.Y., Inc., No. 11-CV-3758 (KAM), 2014 WL 2916964, at *1 (E.D.N.Y. June 25, 2014) (citing Luce v. United States, 469 U.S. 38, 40 n.2 (1984); Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996); Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Grp., 937 F. Supp. 276, 283 (S.D.N.Y. 1996)). "Evidence should be excluded on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." United States v. Paredes, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001). The court may deny motions in limine that are so vague that it cannot determine whether the disputed evidence would be inadmissible at trial. See Othman v. Benson, No. 13-CV-4771 (NGG), 2019 WL 1118035, at *3 (E.D.N.Y. Mar. 8, 2019) (citing Viada v. Osaka Health Spa, Inc., No. 04-CV-2744 (VM), 2005 WL 3435111, at *1 (S.D.N.Y. Dec. 12, 2005)). Further, "courts considering a motion in limine may reserve decision until trial, so that the motion is placed in the appropriate factual context." Jean-Laurent v. Hennessy, 840 F. Supp. 2d 529, 536 (E.D.N.Y. 2011) (citing Nat'l Union Fire Ins. Co., 937 F. Supp. at 287). The court's ruling on a motion in limine is preliminary and "subject to change when the case unfolds." Luce, 469 U.S. at 41.

Defendant argues that this court should exclude two categories of evidence: (1) Dr. Thompson's testimony related to causation; and (2) evidence relating to Plaintiff's partial knee replacement. The court addresses each in turn.

### A. Dr. Thompson's Testimony as to Causation

Defendant argues that Dr. Thompson's testimony on causation should be excluded because "there is no basis for its admission at trial." (Mem. at 23.) In making this argument, it relies on the same reasoning as that rejected above—in essence, that Dr. Thompson may not testify as to causation because he may only testify as to opinions formed in the course of treating Plaintiff and that he did not form a sufficiently reliable opinion as to causation. (Id. at 23-24.) The court rejects these arguments for the reasons set forth above. Dr. Thompson will be permitted to testify as to causation as reflected in his contemporaneously generated medical records. Of course, Defendant remains free to object at trial if it believes that Dr. Thompson's testimony exceeds permissible bounds.

### B. Evidence Relating to Plaintiff's Partial Knee Replacement

Defendant argues that the court should exclude all evidence regarding Plaintiff's partial knee replacement for several reasons. However, as Defendant states in its brief, "Plaintiff has not explicitly expressed an intent to offer evidence of his partial knee replacement at trial." (Mem. at 24.) The court will not rule on the admissibility of evidence without first knowing what that evidence is and how Plaintiff seeks to use it. The court therefore reserves judgment as to the admissibility of evidence of Plaintiff's partial knee replacement.

## IV.   CONCLUSION

For the foregoing reason, Defendant's motion for summary judgment is DENIED, and its motion in limine is DENIED in part. The court RESERVES JUDGMENT as to the admissibility of evidence regarding Plaintiff's partial knee replacement.

SO ORDERED.

                                                                              s/Nicholas G. Garaufis

Dated: Brooklyn, New York                          NICHOLAS G. GARAUFIS
       September 30, 2019                          United States District Judge